1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT**

9

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

10
11

SANDRA GARCIA, et al.,                           CASE NO. CV F 06-0871 LJO TAG

12

              Plaintiff,                          **ORDER ON PLAINTIFFS' MOTION FOR**
                                                 **CLASS CERTIFICATION**

13

       vs.

14

SUN PACIFIC FARMING COOPERATIVE,
et al.,

15
16

              Defendants.
_____/

17

       Pursuant to a notice filed on March 13, 2008, plaintiffs Sandra Garcia and Antonio Pompa Ayon

18

("plaintiffs") seek to certify a class action in this matter.  Defendant Sun Pacific Farming Cooperative

19

("Sun Pacific") filed an opposition on April 15, 2008.  Plaintiffs filed a reply on April 29, 2008.

20

Defendant filed a surreply on May 8, 2008.  Plaintiffs seek to certify multiple classes of current and

21

former Sun Pacific employees for alleged wage and hour violations.

22

                                    **BACKGROUND**

23

                                  **State Court Action**

24

       On October 29, 2004, Tomas Bran filed in Kern County Superior Court his action entitled *Tomas*

25

*Bran v. Sun Pacific Farming Cooperative, Inc., et al.*, Case No. S-1500-CV-254102 ("Kern action").

26

In the Kern action, Bran alleged nearly identical claims to those at issue in this action.  In sum, Bran

27

alleged that Sun Pacific employed migrant, year-round and seasonal laborers to harvest and pick table

28

grapes but failed to pay for all hours worked and to pay overtime, to provide meal and rest periods, and

                                         1

1   to keep accurate records.  At the time, Bran was represented by attorneys Jose Garay of Jose Garay

2   APLC and Roger Carter of The Carter Law Firm.  Bran claims that his counsel devoted efforts to settle

3   for about fourteen months.  Ultimately, the court struck all class allegations and granted Bran's voluntary

4   dismissal without prejudice on December 7, 2005, two court days prior to trial.[1]

5                                          **Federal Action**

6          Seven months later, on July 10, 2006, Bran commenced this current action, alleging Sun Pacific

7   violated the Migrant and Seasonal Agricultural Workers Protection Act ("Workers Protection Act"), 29

8   U.S.C. §§ 1801, et seq. and seven state law causes of action (breach of contract, failure to pay wages

9   and/or overtime, failure to allow meal and rest breaks pursuant to Cal. Lab. Code, § 226.7, failure to

10  keep accurate information and to provide accurate statements of hours and wages under Cal. Lab. Code,

11  § 226 and IWC Wage Order 14, waiting time and penalties under Cal. Lab. Code, § 203, and unfair

12  competition under Cal. Bus. & Prof. Code, § 17200).   In this action, Bran was represented by

13  McNicholas and McNicholas LLP, Kingsley and Kingsley APC and the Law Offices of Marcos

14  Camacho.  On September 18, 2006, Sun Pacific filed a Motion to Dismiss, claiming Bran did not have

15  standing to sue under the Workers Protection Act.

16         On October 13, 2006, Bran was voluntarily dismissed from this action as plaintiff and class

17  representative, because as a tractor driver, he is not a "seasonal agricultural worker" under the Workers

18  Protection Act and therefore did not have standing.  On the same day,  Ms. Garcia and Mr. Pompa

19  (collectively "Plaintiffs") filed a first amended complaint to replace Bran as plaintiff and class

20  representative and to add a cause of action for failure to reimburse expenses to violate California Labor

21  Code section 2802.[2]

22

23

24  _____

25  [1]The parties disagree as to why the voluntary dismissal in the state court action occurred on the eve of trial.  Bran
    contends that after attempts to amicable settled the dispute, Sun Pacific abruptly and inexplicably pulled out of the settlement
26  discussions at the last minute and refused to a join in a motion to vacate the trial date.  Plaintiff's Opposition, p. 3.  Sun
    Pacific claims that shortly before the December 8, 2005 hearing, Sun Pacific learned that Bran's attorneys had been unable
    to locate their client or communicate with him for some time.  Def.'s Motion, p. 3.

27

28  [2] Sun Pacific also filed a Motion to Dismiss Plaintiffs as a class, however that Motion was denied on March 13,
    2007.

                                              2

1

## PLAINTIFFS' MOVING ARGUMENTS

2

## FOR CLASS CERTIFICATION

3      Plaintiffs seek to represent a class of agricultural employees paid on an hourly or piece-rate basis

4   who worked for defendant from July 7, 2002 through the present.  Plaintiffs propose four subclasses of

5   employees:

6      (1)      employees who have not been reimbursed for out of pocket expenses for tools used for

7               employment

8      (2)      employees who worked hours and/or piece rate, and worked less than a ½ day but were

9               not paid for ½ of their usual day work

10     (3)      employees who were not provided a rest period.

11     (4)      employees who were not provided a meal period.

12   (Doc. 13, Plaintiff's Motion for Class Cert. P. 5-6.)  Defendant's agricultural employees are required to

13   work "off the clock" and are not compensated for that time.  Work includes arriving early to set up and

14   organize materials and equipment for harvest, clean up work, and packing fruit after the shift.  If the

15   fields are wet, employees cannot start work or are allowed to leave but are required to wait at the job site

16   until the weather changes.  They are not compensated for the "wait time."  Plaintiffs' moving papers

17   identify allegedly six systematic violations of wage and hour laws:

18     1.       Requiring employees to work off the clock prior to the beginning of the shift.

19     2.       Requiring employees to work off the clock after the shift ends.

20     3.       Failing to provide employees with meal periods.

21     4.       Failing to permit employees to take rest periods.

22     5.       Requiring employees to pay for tools and equipment.

23     6.       Failing to pay minimum wages for piece rate work.

24     During the relevant time period, defendant employed at least 10,000 agricultural employees in

25   California.   Defendant's policies and procedures apply to every class members.   Defendant

26   acknowledges that it strives for uniformity by implementing policies that encompass all defendant's

27   locations.  Defendant written procedures require all farming employees to perform the same tasks and

28   meet the same standards.  Defendant admits that the labor laws, including meal breaks and rest breaks

3

1    are enforced identically throughout all of defendant's locations.  (Exh. 10, Deposition of Bianco,

2    p.37:20-22; 50:4-10,)

3        Defendant has a class wide policy of failure to pay wages, reporting time pay, failure to provide

4    meal and rest breaks, failure to pay overtime and failure to reimburse expenses.

5        Plaintiff seeks to certify a class based on the failure to provide a legally valid meal break.  The

6    time records (Doc. 76, Exh. 6) show shifts of over five or six hours without meal breaks.

7    **A.    Defendant treats its employees as a class**

8        All agricultural employees have been subject to the same policies and procedures.  They have

9    not been provided meal breaks, rest breaks or reimbursed for expenses.

10       Plaintiffs are former employees of defendant.  They advance the same claims as those of the

11   proposed class members.  See Declarations of E. Aguilar, M. Hernandez, R. Sanchez, E. Bautista, G.

12   Rogel, E. Ramos and Monica Jimenes (Doc 76; Exh. 9.)

13   **B.    Class Certification is Appropriate under Rule 23**

14       **Numerosity:** The class is so numerous that joinder would be impracticable.  The proposed class

15   consists of at least 10,000 members.

16       **Common Questions:** The class consists of common questions of law or fact.  Here, the common

17   questions are the policies that defendant employees to improperly compensate its employees.  The

18   declarations that plaintiffs have submitted are from former employees located throughout the state.

19   Plaintiff states since the agricultural employees perform the same finite set of tasks, the issue of whether

20   Sun Pacific owes wages to these employees can be accomplished by examining Sun Pacific's policies

21   and statistical data and hearing representational testimony.

22       **Typicality:** Plaintiffs have the same or similar injury based on the same course of conduct.  They

23   share the same question as to whether the employees were deprived of meal and rest period, overtime,

24   reporting time, and were not reimbursed for expenses.

25       **Representation:** Plaintiffs will fairly and adequately represent the class.  Neither plaintiffs nor

26   counsel have a conflict with any putative class member.  Plaintiffs are willing to vigorously prosecute

27   the action.  Counsel is experience class action and employment lawyers.

28

4

1  **C.      Rule 23(b)(1) Rule 23(b)(2) and Rule 23 (b)(3) are met**

2         There is a risk of inconsistent or unfair adjudication if the class is not certified.  Different courts

3  could adjudicate each individual differently.

4         Rule 23(b)(2) requires that Sun Pacific acted or refused to act on grounds generally applicable

5  to the class.  Sun Pacific treats is agricultural employees as a group and are not provided lawful working

6  conditions.  In addition, plaintiffs seek declaratory and injunctive relief.

7         Under Rule 23(b), common question "predominate" over questions affecting individual

8  members.

9              **DEFENDANT SUN PACIFIC'S OPPOSITION TO**

10             **MOTION FOR CLASS CERTIFICATION**

11        Defendant opposes the motion on three grounds.  Plaintiffs failed to present evidence which

12  satisfies the requirements under Rule 23; there are no generalized, systematic violations which would

13  make the case suitable for class treatment, and the predominance of individualized issues will make the

14  class unmanageable.

15  **A.      Does not satisfy the requirement of Rule 23(a)**

16       **1.      The claims of Garcia and Pompa are not typical of the claims of the class**

17        Plaintiffs seek to represent an extremely large class of current and former employees asserting

18  the Sun Pacific has violated the rights of 10,000 employees.  Plaintiffs offer just two deposition

19  transcripts and seven declarations from members of this "massive and pervasive" violation.  Defendant,

20  on the other hand, presents 33 declarations saying the opposite. Of the 42 employees or former

21  employees whose testimony is before the court, 33 have testified that they did not work off the clock,

22  were paid minium wage, received meal and periods and were provided with necessary tools and

23  equipment. (Exh. 11) The weight of the evidence suggests that the experience by Garcia and Pompa are

24  <u>atypical</u> of the class as a whole.

25       **2.      Garcia and Pompa will not adequately represent the interest of the class.**

26        This motion is boiler plate and fails to include evidence.

27             (1) the motion states that Sun Pacific failed to pay reporting time pay but offers no

28  evidence the Sun Pacific has ever failed to pay mandated reporting time pay.

1        (2) the motion states that the employees were not paid for waiting time but does not offer

2  any evidence in support of that allegation.

3        (3) the motion states that Sun Pacific failed to pay overtime.  Agricultural workers,

4  however, are permitted to work 10 hour day and sixty hour work week.  8 CCR §11140.

5        (4) the motion states that the time records show 5-6 hour work shifts "without meal

6  breaks," when in fact the time records consistently show a 30 minute meal period and 10 minute rest

7  periods.  In addition the time records filed in support of this motion show confidential employee

8  information such as <u>social security numbers.</u>

9      Sun Pacific has submitted counter declaration from five current employee witnesses which cast

10  considerable cloud on the veracity of the declarations submitted by plaintiffs.  The plaintiffs evidence

11  suggests disgruntled former employees who are attempting to represent current employees who have

12  no disputes with Sun Pacific.

13  **B.**      **The class representative do not satisfy Rule 23(b)**

14        **1.**      **The class cannot be certified under Rule 23(b)(3).**

15      Common questions do not predominate over individual issues.  The predominance criterion is

16  more demanding.  *AmChem Prods, Inc. v. Windsor,* 521 U.S. 591, 623 (1997).  In the instant case,

17  plaintiffs submit a very thin evidentiary showing in support of their claim that class members were

18  victims of systematic violations of wage and hour laws.  With respect to a class approaching 10,000

19  members, plaintiffs submit testimony from a mere nine workers representing only 4 of the more than

20  twenty crews.  Each crew averages over 80 employees.

21      Plaintiffs do not identify a <u>single written class wide policy that violates</u> applicable law.  Sun

22  Pacific in fact has a written schedule for required meal and rest periods and Sun Pacific's written

23  "wage/hour policies" (Exh. 13 and 14.)  There is no evidence that Sun Pacific has class wide policies

24  of failing to pay for all time worked, failing to provide meal and rest periods, or failing to reimburse for

25  expenses.  Sun Pacific's farm manager, Vincent Bianco, testified that Sun Pacific maintains uniform

26  policies with respect to meal periods, rest periods, time keeping and tools and equipment, those uniform

27  polices require compliance with applicable wage and hour laws.  Bianco Dep 48: 13-16, 49:7-50:7.

28      Bianco testified that Sun Pacific's common policies provide that employees are not to work off

1   the clock.  They are to take 30 minute meal breaks; take rest periods on an established schedule and are

2   not to work during rest breaks.  (Doc. 77, Opposition papers p. 15.)  In practice, the start and end of the

3   work day and mandated rest periods are signaled by a horn.  (Bianco Decl. §4-5).

4          The evidence viewed most favorable to the plaintiff establishes only that there may have been

5   some inconsistency in the administration of meal periods, rest period, preparatory time.  Plaintiffs

6   evidence establishes only sporadic irregular departures from company policy.

7          Sun Pacific policies do not establish or even suggest a systematic wage and hour violations have

8   occurred.  There are no common policies which militate in favor of certification at all.  The Court will

9   have to make individual determinations as to whether employees worked off the clock, received meal

10  periods, and rest periods.

11         **2.      Class certification is not a superior method**

12         The difficulties likely to be encountered in the management of a class action are so great that the

13  class should not be certified.  Individualized questions underlie any determination of Sun Pacific's

14  liability.  Management of the class will require individual adjudication of each class member's claim.

15         Plaintiffs suggest that the litigation can be made manageable through the use of sampling,

16  statistical data and representational testimony.  The fallacy is that such techniques are only appropriate

17  for measuring damages once liability is determined.  The Court, here, must first determine that wage and

18  hour violation occurred on a systematic basis. Moreover, statistical sampling has been held to be proper

19  only when the employer fails to fulfil its legal obligations to maintain accurate time records.  *Bell v.*

20  *Farmers Ins.*, 115 Cal.App.4th 715, 729-30 (2004).  Here, the class consists of migrant season workers.

21  They tend to move from year to year and return to Mexico during the off season.  Most of the workers

22  do not speak or read English and have very limited ability to read and write Spanish.  Sun Pacific does

23  not have accurate addresses for former employees who would be class members.  Sun Pacific only has

24  current address for only half of the class members.

25         **3.      There are superior avenues to aggrieved employees**

26         Denial of class certification will not leave the employees without a remedy.   The California

27  Labor commissioner provides a cost free forum.

28

**C.      Class certification is not appropriate under Rule 23(b)(2)**

The claimed monetary damages are not secondary to the primary claim for injunctive relief.  The Court can certify a class seeking monetary damages "if the claim for monetary damages [is] secondary to the primary claim for injunctive or declaratory relief."  *Molski v. Gleich*, 318 Fl.3d 937, 947 (9th Cir. 2003).  Here plaintiff's primary claim is for monetary damages and the injunctive relief is secondary.  *Jiminez v. Domino's Pizza, Inc.*, 238 F.R.D. 241 (C.D. 2006).

**D.      There is no risk of inconsistent adjudications**

There is not a limited fund exists against which inconsistent judgments would limit payment.  Further courts have held certification of wage and hour cases are not appropriate under Rule 23(b)(1).

## PLAINTIFFS' REPLY

Plaintiffs submit additional declarations of many new class members who have stepped forward to speak out regarding work conditions.  (Doc. 83.)  Plaintiffs submit evidence that defendants have coerced employees into signing false declarations and concocted evidence to oppose this motion.

One employee, N.Sanchez, submitted a declaration on behalf of defendant stating that she was provided meal and rest periods, and was paid for all time worked.  In their reply, plaintiffs submit another declaration of N. Sanchez which paints a different picture.  For defendant's declarations, she states that she was called into the office one day at work and read a declaration to sign.  Her comments where not incorporated and she was frightened into signing.  N. Sanchez now submits a declaration wherein she states, she was not provided meal or rest periods, she was required to work off the clock, she took bins home to clean without compensation and she bought her own tools.  (Doc. 83-2.)

While defendant argues the class would be "unmanageable," defendant does not produce evidence  that the class is unmanageable.  Plaintiff however presents evidence the class is manageable.  Defendant is the sole employer of the class and applies its policies and procedures in a unified way.  Defendant treats the employees as a class.

While defendant also argues its **written policies** do not violate the law, plaintiff counters that the actual **daily practices** are the point of contention.  Defendant fails to pay proper wages and provide breaks; defendant intimidates workers from pursuing legal remedies, and forces employees to sign declarations that do not reflect accurate testimony.  While defendant argues that the time records show

breaks were taken.   Plaintiffs and other declarants have testified that their managers recorded the "breaks" and the employees did personally record breaks.   The evidence indicates that breaks were recorded, but not actually taken.

Each of the declarations submitted by defendant are inadmissible.   Defendants translator failed to verify its translations under penalty of perjury.   FRE 604, 901.   Morever the evidence shows that the defendant's translator did not provide the translation to at least one of the declarants.

## DEFENDANT'S SURREPLY

**A. Defendant did not coerce testimony**

SunPacific and counsel underwent elaborate procedures to ensure the declarations were accurate and correctly translated.

1.   Attorney Carrol met with each declarant for 1-2 hours in early April and wrote what they said about rest periods, breaks, pay etc.   The statements were handwritten and the person signed.

2.   The statements were typewritten and 2 weeks later the declarants were asked to sign after going over the content with a certified translator.

3.   Declarants were given the opportunity to request changes to the declarations which were changed on the spot.

Nelida Sanchez' declaration was handled the same way. Plaintiffs present a second declaration by Nelida Sanchez who says she was not given the opportunity to change her declaration and she recants her prior declaration.

In its surreply, defendant provides contrary evidence that the contents of the second Nelida Sanchez declaration, the one provided by plaintiff, is incorrect.   Claudia Gonzalez testified that she did not translate for Nelida and the Sun Pacific hired to certified translators. Claudia was in the room and saw translator Amy Alcantara translate. (Doc. 92-3, Claudia Decl.)  Attorney Carrol testifies that he met with Nelida on April 3 and he hand wrote what she told him and she signed the documents. (Doc. 92-6, Carrol Decl.)

Defendant submits evidence from which it can be inferred that Nelida recanted her testimony due to family pressure and pressure from the United Farm Workers Union. (Doc. 92-3, Claudia Decl. ¶12-

13.)  Representative from the United Farm Workers Union went unannounced to the homes of persons who signed declarations on behalf of defendant.  Nelida is the daughter of one of plaintiff's declarants Rutilla Sanchez.  Defendant argues that union pressure and family pressure cause her to recant her testimony.

**B.      Common Questions do not predominate**

Plaintiffs concede there are no common written policies or time records which will facilitate trial on a class wide basis.  Plaintiff's claims are built on the premise that Sun Pacific's time records, which show breaks and meal periods, are not accurate.  Thus this impliedly acknowledges that the records will not be helpful in determining systematic wage and hour violations.   The evidence before the court indicates that this lack of consistency in how individual employees are treated.  Anecdotal evidence will have to be used to determine whether individual employees received meal and rest periods.  Whether violations occurred in the fields will involve thousands of mini trials.

There are no consistent, company wide violations on which a class can be certified.  Plaintiffs have produced uncontroverted testimony of alleged violations only **as to one crew**. Several declarants by Sun Pacific were given meal and rest periods.  The evidence before the court is that some were treated in accordance with wage and hour laws and others were not.  Thus, individualized inquiries are necessary.

**C.      This is primarily an action for damages**

Rule 23(b)(2) is not appropriate where the primary relief is for monetary damages.  Here, the plaintiffs are *former* employees and undermines any argument that injunctive relief is the primary relief sought.  Injunctive relief will not benefit *former* employees.

## ANALYSIS AND DISCUSSION

**A.      Rule 23 Requirements**

A class for the violations alleged in the complaint must satisfy Fed.R.Civ.P.23 ("Rule 23").

The burden is on the party seeking to maintain the class action.  In this case, plaintiff must establish a prima facie showing of each of the elements of Rule 23 (a) prerequisites and the appropriate 23(b) ground for a class action.  *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1176 (9th Cir. 2007); *Taylor v. Safeway stores, Inc.*, 524 F.2d 263, 270 (10th Cir. 1975).

All class actions under Rule 23 must meet four prerequisites:

    1.    Numerosity,

    2.    Commonality,

    3.    Typicality, and

    4.    Adequacy of representation.

The Court must also find that at least one of the following three conditions of Rule 23(b) are satisfied:

  (1) the prosecution of separate actions would create a risk of:

    (a) inconsistent or varying adjudications or (b) individual adjudications dispositive of the interests of other members not a party to those adjudications;

  (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or

  (3) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

See Fed.R.Civ.P. 23(b).

Before certifying a class, the Court must conduct a "rigorous analysis" to ensure that the four requirements of Rule 23(a) are met and that the class fits within one of the three categories of Rule 23(b). *General Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364 (1982). Plaintiff can meet this burden by "providing the Court with a sufficient basis for forming a 'reasonable judgment' on each requirement." *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir.1975), *cert. denied*, 429 U.S. 816 (1976). The movant's burden is to produce evidence by affidavits, documents or testimony establishing each Rule 23 requirement. A class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Tel. Co. of Southwest v. Falcon*, 457 US 147, 161, 102 S.Ct. 2364, 2372 (1982); *see In re Initial Public Offering Secur. Litig.*, 471 F.3d 24, 33 (2nd Cir. 2006) (Rule 23 requirements must be met, not just supported by "some evidence.")

**B.**    **Application of Rule 23 Requirements to the Facts of the Case**

    **1.**    **Numerosity**

The class must be so numerous that joinder of all members individually is "impracticable."

Fed.R.Civ.P. 23(a)(1).   No specific numerical threshold is required; each case must be examined. *General Tel.C. v. E.E.O.C.*, 446 U.S. 318, 330, 100 S.Ct. 1698 (1980).   Generally, 40 or more members will satisfy the numerosity requirement.   *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2nd Cir. 1995), *cert. denied*, 515 U.S. 1122 (1995).

Here, plaintiffs allege that the total number of potential members is near 10,000 persons.   The parties do not dispute numerosity.

Defendant argues that the class size, at 10,000 would be unmanageable.

In *Dukes v. Wal-Mart Stores, Inc.*, 509 F.3d at 1190, the class involved 1.5 million female employees of Wal-Mart. In *Dukes*, the court noted that the sheer size of the class did not preclude the manageability of the class.   The Court noted that the trial court had devised a management plan.   The trial plan described by the district court involved two stages. In Stage I, Plaintiffs would attempt to prove that Wal-Mart engaged in a pattern and practice of discrimination against the class via its company-wide employment policies and stage two was left for punitive damages proof.   *Id.* at 1191 n. 16.   The court did not approve, nor disapprove the trial court's proposed plan.   The court stated that, "there are a range of possibilities-which may or may not include the district court's proposed course of action-that would allow this class action to proceed in a manner that is both manageable and in accordance with due process, manageability concerns present no bar to class certification here." *Id.*  at 1191. The *Dukes* court cited to *Hilao v. Estate of Ferdinand Marcos*, 103 F.3d 767, 782-87 (9th Cir.1996), wherein the trial court devised a statistical approach to a 10,000+ plaintiff class.   In *Hilao*, the trial plan was founded upon a selection of plaintiffs based on random sample of a 137 of plaintiffs of the class.   An expert testified that "a random sample of 137 claims would achieve a 95 percent statistical probability that the same percentage determined to be valid among the examined claims would be applicable to the totality of claims filed."   The court stated that it could "see no reason why a similar procedure to that used in Hilao could not be employed in this case, we conclude that there exists at least one method of managing this large class action." *Dukes*, at 1193.

A 10,000 member class, while it may appear daunting, has not been the basis upon which the Ninth Circuit has approved denial of class certification.

1

### 2.      Commonality

2        There must be questions of law or fact common to the class.  Fed.R.Civ.P. 23(a)(2).  A "common

3   nucleus of operative facts" is usually enough to satisfy the commonality requirement.  *Rosario v.*

4   *Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992), *cert. denied*, 506 U.S. 1051 (1993).  Commonality

5   focuses on the relationship of common facts and legal issues among class members.  *Dukes v. Wal-Mart,*

6   *Inc.*, 509 F.3d 1168, 1177 (9th Cir. 2007).  "[P]laintiffs may demonstrate commonality by showing that

7   class members have shared legal issues by divergent facts or that they share a common core of facts but

8   base their claims for relief on different legal theories."  *Dukes v. Wal-Mart,* 509 F.3d at 1177.

9        In *Dukes*, the proposed class encompassed approximately 1.5 million employees, both salaried

10   and hourly, with a range of positions, who are or were employed at one or more of Wal-Mart's 3,400

11   stores across the country. *Id.* at 1177.  Plaintiffs argued in *Dukes* that the large class is united by a

12   complex array of company-wide discriminatory practices against women.  In *Dukes*, the District Court

13   certified a class of workers and the Ninth Circuit affirmed the certification.  The Ninth Circuit held that

14   plaintiff presented commonality of facts or law.  Plaintiffs presented four categories of evidence: (1)

15   facts supporting the existence of company-wide policies and practices; (2) expert opinions supporting

16   the existence of company-wide policies and practices; (3) expert statistical evidence of class-wide gender

17   disparities attributable to discrimination; and (4) anecdotal evidence from class members around the

18   country of discriminatory attitudes held or tolerated by management.  *Dukes v. Wal-Mart*, 509 F.3d at

19   1178.  After reviewing the totality of the plaintiffs' evidence, the Court held that: "Plaintiffs' factual

20   evidence, expert opinions, statistical evidence, and anecdotal evidence demonstrate that Wal-Mart's

21   female employees nationwide were subjected to a single set of corporate policies (not merely a number

22   of independent discriminatory acts) that may have worked to unlawfully discriminate against them in

23   violation of Title VII."  *Id.* At 1183.

24        Here, plaintiffs present two kinds of evidence: (a) facts supporting the existence of company

25   wide policies (deposition testimony by Defendants Farm Manager, Vincent Bianco, and the defendant's

26   Employee Handbook), and (b) anecdotal evidence from class members as to their experience with wage

27   and hour violations.

28

a.      **Facts supporting a company wide policy**

Plaintiffs argue defendant has a class wide policy of failure to pay wages, reporting time pay, failure to provide meal and rest breaks, failure to pay overtime and failure to reimburse expenses. that there is a company wide policy.  In its opposition, Defendant points out that plaintiffs have not identified any **written policy** which violates the law.  Plaintiffs respond that, written policies aside, the actual **daily practices** are the point of contention.

In *Dukes,* plaintiff established **company wide** gender discrimination on evidence of: (1) uniform personnel and management structure across stores; (2) Wal-Mart headquarters's extensive oversight of store operations, company-wide policies governing pay and promotion decisions, and a strong, centralized corporate culture; and (3) consistent gender-related disparities in every domestic region of the company.  Based on this evidence, the Court stated: "Such evidence supports Plaintiffs' contention that Wal-Mart operates a highly centralized company that promotes policies common to all stores and maintains a single system of oversight."  *Dukes v. Wal-Mart*, 509 F.3d at 1178.

In this case, plaintiffs present evidence of deposition testimony from Farm Manager Vincent Bianco ("Bianco").  Bianco testified the labor laws, including meal breaks and rest breaks, are enforced identically throughout all of defendant's locations. (Doc. 76, Exh. 10, Deposition of Bianco, p.37:20-22; 50:4-10.) Bianco testified that Sun Pacific maintains uniform policies with respect to meal periods, rest periods, time keeping and tools and equipment, those uniform polices require compliance with applicable wage and hour laws.  (Doc. 76, Exh. 10, Bianco Dep 48: 13-16, 49:7-50:7.)  Bianco testified that Sun Pacific's common policies provide that employees are not to work off the clock.  They are to take 30 minute meal breaks; take rest periods on an established schedule and are not to work during rest breaks.  (Doc. 77, Opposition papers p. 15.)  In practice, the start and end of the work day and mandated rest periods are signaled by a horn.  (Doc. 77-2; Bianco Decl. ¶4-5.)

The evidence presented by plaintiff is unlike the evidence presented in *Dukes*.  Plaintiffs do not point to a company wide policy in violation of labor and wage laws.  While plaintiffs cite to Bianco's deposition, the remaining portions of the deposition and Bianco's declaration state that the policies that are enforced company wide are enforced to comply with wage and hour laws.  Indeed, in their reply brief, plaintiff's concede that it is not the **written** policies which are challenged, but the policies **in**

**practice in the field**.

### b. Anecdotal evidence agricultural workers.

The evidence of policies in practice in the field is presented in the form of declarations from agricultural workers.  The evidence of the policies in practice, however, is strongly in conflict.  Some evidence before the Court indicates the policies are in violation of wage and hour laws.  (See Doc. 76-10.)  Other evidence, equally compelling, before the Court indicates that the policies in practice are not in violation.

Plaintiffs present anecdotal evidence from former agricultural workers who each testify, in sum and substance, that (1) **meal period**: they were not provided nor compelled by a supervisor to take a 30 minute uninterrupted meal period, they would work 10-15 minutes of their "lunch period"; (2) **rest period**: they were not provided nor compelled by a supervisor to take a 10-minute rest period or they were required to work during part of the "rest period," (3) **off the clock**: they were required to work "off the clock" 20-30 minutes before the scheduled start of the day, to gather materials and prepare for the day, and 10-30 minutes off the clock at the end of the day, to clean-up from the day, (4) **Bins:** they were required to take home the picking bins to wash on a daily basis, (5) some were paid less than **minimum wage**, and (6) **Tools:** they were required to purchase their own tools without reimbursement.

In their moving papers, plaintiffs present declarations from seven former agricultural workers were in 4 different "crews."  A "crew" is the operation unit in which the field workers work.  (Doc.77-4, Claudia Gonzalez Decl. ¶2.)  Sun Pacific has between 26 and 28 crews during the harvest season.  *Id.* Harvest season is July through November.  At harvest time, a harvest crew has between 82 and 85 employees.  *Id.*

Sun Pacific has filed declarations from employees from each of the crews that are currently active at Sun Pacific.  (Doc.77-4, Claudia Gonzalez Dec. ¶3; see Doc. 77-5 to 77-32.)  These declarations counter the plaintiff's declarations.[3]  Each of the defendant's employee declarations take the opposite

---

[3] Plaintiffs object to the declarations submitted by defendant on the grounds that the defendant's translator failed to verify the translations of the declarations under penalty of perjury.  Fed.R.Evid. 604, 901.  In its surreply, defendant submitted declarations from each of the two interpreters who translated the declarations.  (Doc. 92-3, Decl. Amy Alcantra, Doc. 92-4, Decl. Donna Lancaster.)  The interpreters state the each of the declarations were translated and the interpreters include certifications of their translations.

1   position from the position taken by plaintiffs' declarants.  Defendant's employee declarations state that

2   the employees **were given** uninterrupted meal and rest period breaks; **did not** work off the clock; **did**

3   **not** take work bins home; and were provided tools for the job by the company. (Doc. 77-5 to 77-32.)

4   Thus, these declarations are completely contrary to the statements in plaintiffs' declarations.

5       Defendant argues that it presents 33 declarations saying the opposite of what plaintiffs claim are

6   defendant's policies.  Defendant argues that of the 42 employees or former employees whose testimony

7   is before the court, 33 have testified that they did not work off the clock, were paid minium wage,

8   received meal and periods and were provided with necessary tools and equipment.  Circumstantial or

9   anecdotal evidence, such as declarations from would-be class members, may be used to establish the

10  Rule 23 factors.  But the number of declarations presented need not be "statistically significant." *Dukes*

11  *v. Wal–Mart, Inc.*, 509 F.3d at 1182 (120 declarations submitted in support of motion out of potential

12  1.5 million member class).  Here, **the number** of declarations submitted as proof of any party's position

13  is not controlling as to whether a class should be certified.

14      The important issue is that there is significant **conflicting anecdotal evidence**.  The declarants

15  which defendants presents are often in the same "crews" as the declarants for plaintiffs.  For instance,

16  defendant's declarant Gerardo Valenzuela, in Crew 22, states he was provided meal and rest breaks and

17  did not work off the clock.  Plaintiffs' declarant, Guadalupe Rogel, also in Crew 22, states she did not

18  receive meal and rest breaks and worked off the clock.  Both had the same crew boss and both worked

19  during the same time frame. (See Doc. 77-2.)  Several other declarants within the same crew also have

20  conflicting testimony.  (See . (Doc.77-4, Claudia Gonzalez Decl. ¶3; see Doc. 77-5 to 77-32, "Crew 23,"

21  Declarant Aida Insunza and Plaintiffs as declarants.)  Thus, the evidence is directly contradictory.  (Doc.

22  77-2, dec. Dale Hudson, Exh. 11.).)

23      This conflicting testimony poses a significant concern for managing the class action.  Based on

24  the evidence before the Court, there is not consistent application of the wage and hour laws between and

25  _____

26      Further, plaintiffs request a continuance of this motion to permit "Plaintiffs to depose each and every declarant,"
    should the Court considers the employee declarations submitted by defendants.   (Doc. 82, Reply Memorandum p.2 n.2.)

27  This request is denied.  This Court, however, retains discretion to revisit certification, on new and different evidence,
    throughout the legal proceedings before the Court. *Dukes v. Wal-Mart*, 509 F.3d at 1176.

28

among the various Crews.  Some persons within a Crew are given meal and rest breaks, while others in the same Crew are not given meal and rest breaks.  Unlike the evidence in *Dukes,* there is no strong evidence of company wide policies and corporate structure.  The evidence before this Court demonstrates significant differences between the crews and individuals and no commonality.  Plaintiff is therefore unable to demonstrate commonality.

### c.    Plaintiffs' reply declarations refuting Defendant's declaration

In plaintiffs' reply, plaintiffs submit additional declarations from other agricultural employees. These additional employees contend that the original plaintiff declarations are the true state of the company policy.  They state basically the same evidence as the original declarants: They have not been provided meal breaks, rest breaks or reimbursed for expenses, they were required to work off the clock and perform work at home without compensation.  (See Doc. 89, Decl. of Kingsley, Exh. 22-34.)

In addition, plaintiffs submit their own declaration of agricultural employee N. Sanchez. ("Second Sanchez Declaration;" (Doc. 89, Ms. Sanchez Decl. Of Kingsley, Exh. 20.))  Ms. Sanchez originally submitted a declaration in support of defendant's position that defendant complied with all laws and she has been paid for all her work.

In the Second Sanchez Declaration, Ms. Sanchez paints an entirely different picture from her prior testimony.  For defendant's declaration, Ms. Sanchez states that she was called into the office one day at work and read a declaration to sign.  Her comments where not incorporated and she was frightened into signing.[4]  Ms. Sanchez now submits a declaration wherein she states, she was not provided meal or rest periods, she was required to work off the clock, she took bins home to clean without compensation and she bought her own tools.  Thus, the Second Sanchez Declaration entirely

---

[4] While Ms. Sanchez states she was frightened, she provides no facts to support anything other than her fear arose from the unique situation of being called into the office and meeting with an attorney.  At plaintiff's inference that defense counsel's conduct was intimidating and coercive to Ms. Sanchez, this Court required plaintiff to file declarations to substantiate her unsupported inference.  (Doc. 93.)  Plaintiffs merely refiled Ms. Sanchez's declaration.  Thus, based on lack of any evidentiary support, the Court concludes that there is no evidence before the Court that defense counsel's conduct was improper.  See Doc. 92-5, Declaration of Carrol describing the process engaged in for interviewing the agricultural workers.

1    contradicts her prior testimony.[5]

2    Defendant objects to the new declarations submitted by plaintiffs in their reply.  Defendant

3    argues that the new declarations are improper matter for a reply brief and also objects on evidentiary

4    grounds.[6]

5    The Court has considered the additional declarations from other agricultural employees.  These

6    declarations are more of the same evidence as the original declarations submitted by plaintiffs.  These

7    declarations create more conflicting evidence before the Court.  Further, the number of new declarations

8    does not alter the rigorous analysis for the Court.  The anecdotal evidence remains significantly in

9    conflict.  There is no other evidence for the Court to consider. Rule 23 provides district courts with broad

10   discretion to determine whether a class should be certified, and to revisit that certification throughout

11   the legal proceedings before the court. *Dukes v. Wal-Mart*, 509 F.3d at 1176.

12   The Court finds that due to the conflicting evidence on the very wage and hour violations alleged

13   in the complaint, within and among the various crews, the plaintiffs have not shown commonality.

14       **2.      Typicality**

15   Although the commonality and typicality requirements of Rule 23(a) tend to merge, each factor

16   serves a discrete purpose. Commonality examines the relationship of facts and legal issues common to

17   class members, while typicality focuses on the relationship of facts and issues between the class and its

18   representatives. *Dukes v. Wal-Mart*, 509 F.3d at 1184, citing 1 Newberg on Class Actions, § 3:13 at 317.

19   Rule 23(a)(3) requires that "the claims or defenses of the representative parties be typical of the claims

20   or defenses of the class.""[U]nder the rule's permissive standards, representative claims are 'typical' if

21   they are reasonably coextensive with those of absent class members; they need not be substantially

22   identical." *Dukes v. Wal-Mart*, 509 F.3d at 1184.  In *Dukes*, the court found that the representative's

23

24       [5] Defendant presents evidence that Ms. Sanchez' change of testimony may be related to family pressure.  One of
25   plaintiffs' declarants is Ms. Sanchez' mother, Rutila Sanchez.  (Doc. 92-3, Decl. Of Claudia ¶4.)  Mother and daughter
     initially took different positions on whether or not they had been properly and completely paid.  Regardless of which version
26   of Ms. Sanchez' declaration is the truth, and only one can be the truth, the declarations create more conflicting evidence as
     to what policies and procedures occur in practice.

27       [6] Defendant objected on the grounds of submitting new matter, inadmissible hearsay, lack of personal knowledge,
28   etc. (See Doc. 92-6, Objections).  This Court thoroughly reviewed and considered the evidence which it deemed admissible,
     material and appropriate for the motion for class certification.

claims were typical, despite the differences in alleged employment practices:

> Even though individual employees in different stores with different managers may have received different levels of pay or may have been denied promotion or promoted at different rates, because the discrimination they allegedly suffered occurred through an alleged common practice-e.g., excessively subjective decision-making in a corporate culture of uniformity and gender stereotyping-their claims are sufficiently typical to satisfy Rule 23(a)(3).

Here, the representatives' claims are typical of **some** of the proposed class members but **a**typical of other of the proposed class members. Each of the proposed representatives claims that he/she were denied full compensation in violation of labor laws. The representatives claim that they were not permitted or allowed to take uninterrupted meal or rest periods, among other violations. Additional proposed class members submitted declarations which state that, they too, were denied these rights. Other proposed members, however, submitted declarations that state their rights were not denied by Sun Pacific. For these and possibly other proposed members, they were paid for their work and given breaks. Thus, the representatives claims are not typical of all of the proposed class members.

In *Dukes*, the court found the representative's claims typical of the class based on what was claimed as the alleged violation. "[B]ecause all female employees faced the same alleged discrimination, the lack of a class representative for each management category does not undermine Plaintiffs' certification goal." *Dukes v. Wal-Mart,* 509 F.3d at 1184. Thus, typicality is determined by the violation alleged to have occurred.

Here, the alleged violation is wage and hour violations. As stated above, there is significantly conflicting evidence as to the merits of whether or not the violations occurred. A preliminary inquiry into the merits is sometimes necessary to make a meaningful determination of class certification issues. For example, to determine the "typicality" of the representative's claims or defenses, the "adequacy" of the representative, and the presence of "common questions" of law or fact, the court must understand the claims, defenses, relevant facts and applicable substantive law. *Coopers & Lybrand v. Livesay*, 437 US 463, 469, 98 S.Ct. 2454, 2458 (1978) (class certification may require courts to answer questions "enmeshed in the factual and legal issues comprising the plaintiff's cause of action"). The representative's claims are not typical of the class members, because violations did not occur as to some

1  class members.

2               **d.**     **Adequacy of Representation**

3         The person representing the class must be able "fairly and adequately to protect the interests" of

4  all members in the class. Fed.R.Civ.P. 23(a)(4). The representation is "adequate" if the attorney

5  representing the class is qualified and competent and the class representatives are not disqualified by

6  interests antagonistic to the remainder of the class. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d

7  597, 512 (9th Cir.1978).

8         Plaintiffs argue they will fairly and adequately represent the class.  Neither plaintiffs nor counsel

9  have a conflict with any putative class member.  Plaintiffs are willing to vigorously prosecute the action.

10  Counsel is experience class action and employment lawyers.

11         Defendant does not challenge the adequacy of the representation by the named plaintiffs other

12  than that they are former employees who seek to represent current employees.  Further, defendant does

13  not dispute that counsel is an experienced wage and hour attorney.  (Doc. 77, Opposition papers p.10:9-

14  10.) Defendants complain as to the adequacy of the legal representation based upon the "quality" of the

15  motion to certify and the supporting evidence.  (*See Id.*)  In any event, a determination on adequacy of

16  representation is not necessary given the Court's finding that Plaintiff cannot satisfy commonality and

17  typicality under 23(a).

18  **C.**     **Rule 23(B) requirements**

19         As noted above, if plaintiffs satisfy their burden under Rule 23(a), the Court must also find that

20  at least one of the following three conditions of Rule 23(b) is satisfied:

21    (1) the prosecution of separate actions would create a risk of:
      (a) inconsistent or varying adjudications or (b) individual adjudications

22        dispositive of the interests of other members not a party to those
      adjudications;

23

24  (2) the party opposing the class has acted or refused to act on grounds generally
applicable to the class; or

25  (3) the questions of law or fact common to the members of the class predominate over
any questions affecting only individual members, and a class action is superior to other

26  available methods for the fair and efficient adjudication of the controversy.

27  Plaintiffs propose certification under both Rule 23(b)(2) and 23(b)(3).

28         Here, the 23(b)requirements are evaluated when all requirements under 23(a) have been met.

Since the Court found that plaintiffs have not carried their burden of meeting the 23(a) requirements, an analysis of whether the Rule 23(b) requirements are met is not necessary. For instance, the predominance requirement of Rule 23(b)(3) is more stringent than the commonality requirement of Rule 23(a)(2), and the analysis under Rule 23(b)(3) "presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2)." *Hanlon* v. Chrysler Corp., 150 F.3d 1011, at 1019-1022 (9th Cir. 1998). As Plaintiffs cannot demonstrate commonality under the more permissive standard of 23(a), they can not do so under the heightened standard of 23(b).

### CONCLUSION

For the foregoing reasons, plaintiffs' motion for class certification is DENIED.

IT IS SO ORDERED.

**Dated:    May 14, 2008**                    **/s/ Lawrence J. O'Neill**
                                        UNITED STATES DISTRICT JUDGE